GILLESPIE et al. *versus* SOMERVILLE.

1. The authority given to the circuit and county courts, in relation to the allotment of dower, is not exclusive of the power of chancery, to determine, whether the husband held an estate of which the wife is dowable.

2. Although a widow, in this State is to be endowed of lands, held by her deceased husband, both under legal and equitable titles, yet, it must be a perfect equity; and the right of dower does not extend to a mere naked equity.

3. Where a man purchases land from government, on the credit system; or from commissioners of a town, taking a certificate or bond, for titles, when the purchase money should be paid; and dies, without completing payment therefor, his widow is not entitled to dower, in the lands so purchased.

In error from Franklin Circuit court.

Alexander Somerville filed a bill in Chancery, against Catherine Gillespie, setting out, that, in January, 1823, and, for some time previous, he was the co-partner of Robert Gillespie, the husband of Catharine, in the business of merchandising : that the said Somerville and Gillespie, about that period agreed, mutually, to dissolve their connection ; and, thereupon, stated their accounts, whereby Gillespie was found indebted, in a considerable sum. That, in order to settle and liquidate the amount thus declared against him, Gillespie agreed to relinquish to Somerville, (and did put him in possession,) all his right, title and interest in and to certain lots, lying in the town of Russelville, and which had been sold by the commissioners of that town, to Gillespie.— The title of Gillespie, (as was alleged in the bill,) to these lots, was only an equitable interest, the commissioners having given to Gillespie, a bond, stipu-

lating for the execution of titles, when the purchase money should be paid.

The bill further set out, that Gillespie had executed to the complainant, bond for titles, and in pursuance thereof, had subsequently made titles to a portion of the lots. That afterwards Gillespie left the State and died; that his widow had filed a petition in the county court of Franklin, (which was transferred to the circuit court,) and that a decree had been rendered by that court alloting to the widow her dower in the real estate, mentioned in the bill as having been sold to the complainant, by Gillespie in his lifetime. The bill did not disclose whether Gillespie had or not paid for the lots in question; but insisted that Gillespie held in them only an equitable estate; and prayed relief, &c.

The Chancellor granted an injunction restraining all proceedings; and Catherine Gillespie filed an answer, not denying the contract, but insisting that Somerville had not performed his part thereof. Also, relying on the facts that Somerville had received from her no relinquishment of dower, and that he had litigated her right to dower in the proceedings before the circuit court; and which she insisted were conclusive.

The Chancellor in rendering a final decree in the cause, perpetually enjoined the proceedings on the allotment of dower to the widow, and appointed a commissioner to make titles to Somerville.

This decree was the cause assigned in error, for reversal.

*W. B. Martin* and *P. Martin,* for plaintiff—*Hopkins, contra.*

LIPSCOMB, C. J.—This cause was commenced by an original bill, filed by the defendant in error, against Catharine W. Gillespie, and the heirs of Robert Gillespie.

The facts material to this investigation, as they appear from the bill, answer and exhibits are these—

The complainant and Robert Gillespie, the husband of Catharine W., had been, for some time, engaged as copartners in merchandise, in the town of Russelville. That Gillespie was greatly in arrears and indebted to the firm. That, on the 10th January, 1823, they agreed on the basis of a dissolution of the firm, to be completed and go into effect, on the first of March, ensuing. That, it was agreed, that Gillespie should convey to the complainant, certain town lots, in the town of Russelville; for which lots the said Gillespie held the obligation or agreement of the commissioners of the town of Russelville, to make him titles, so soon as he should make payment therefor. That, in pursuance of the basis agreed on, the co-partnership was dissolved, on the 1st of March, and Gillespie then covenanted, to make good and complete titles to the lots that had been mentioned in the basis of the agreement, previously entered into, as soon as the commissioners of the town of Russelville were prepared to make titles; and the complainant was then put into the possession of the lots.

On the 24th January, 1824, the commissioners of the town of Russelville, made a deed for the lots in question, to Gillespie, who, some time afterwards, executed a deed to the complainant, for a part of the lots, and died.

After his death, his widow filed her petition in the county court, for her dower, in all of the lots. This petition, by consent of parties, was, afterwards, transferred to the circuit court of Franklin county; in which court, an order was made, allowing, and setting apart her dower, in all the lots, claimed by the complainant, under the purchase from her husband.

This bill was filed, to enjoin the order of the circuit court, allowing the dower; and to compel the heirs to convey the lots, which had not been included in the deeds, made by their ancestor.

The answer of Mrs. Gillespie, does not deny the allegations of the bill, as to the contract made between her deceased husband, and the complainant.— But, avers, that the complainant had never complied with his covenants with her husband; and, that she had never relinquished her dower. She insists that the order of the circuit court, allowing her dower, was made by a court of competent jurisdiction, to decide on her rights: and, that the complainant had an opportunity, and did resist her claim of dower, in that court.

She insists on the conclusiveness of that judgment, as having fully adjudicated the question, between herself and the complainant.

There were many other matters, connected with the bill and answer: but, as they are not material, in disposing of the question of the widow's right of dower, they have not been noticed, in the preceding analysis of facts.

There are two material points, to be investigated, and decided, by this court: the first, is, has this court jurisdiction?—and, the second, was the estate of the

deceased husband, in the land, sufficient to entitle his widow to dower?

On the first point, it was argued, by the counsel for the plaintiffs in error, that, as the circuit court had full cognizance of the matter, and, in fact, did fully hear and determine the same objections, now urged, that its judgment ought to be conclusive.— That, the Chancellor, in entertaining the bill, exercised appellate, rather than original jurisdiction, in this case.

If the court of law was fully capable of adjudicating the rights of the parties, and, did, in fact, adjudidate on the merits of the parties to this suit, as was argued, there certainly could be no propriety, in a court of chancery disturbing, and reviewing that judgment.

But, it is denied, that a court of law was competent to dispose of the question of dower, in this case. It is said, that the matter is too complex for the rules of law.—And that, as the legal title was in the deceased husband, a court of law would be compelled, from its incapacity to take cognizance of the complainant's equitable title, to acknowledge the widow's right of dower. The last argument is worthy of consideration ; and, if it is sound, must be decisive.

Matters of trust are peculiarly cognizable in a court of chancery—whether the trust be express or implied. For, equity will raise an implied trust, for the purpose of enforcing the obligations of justice, when no trust has been expressly created. And this is one of the most distinguished attributes of chancery jurisdiction. By the exercise of this power, the Chancellor can probe the consciences of men,

ascertain the true character of their transactions, and consider that, as done, that should have been done.

In this way, if a particular fund is placed by one man in the hands of another, for the purpose of making an investment, and a purchase should be made, by the person entrusted with the fund, in his own name, instead of that of his principal, equity will raise a trust, and hold the purchaser as trustee, for the benefit of the party, who had placed the fund in his hands.

So, too, if a valid contract, for the sale of lands, has been made, after the payment of the purchase money, equity will hold the vendor to be a trustee for the vendee.

If it be true, that the equitable title and the legal title, in the lands out of which dower was claimed, in this case, was severed, and, that the legal title, alone was in the husband, whilst the equitable title was in the complainant, it would seem to afford a good ground, for the interposition of a court of equity; and, it may be well questioned, whether a court of law could afford to the complainant a proper remedy.

<sup>a</sup>Toul.Dig. 259   By our statute,[a] the widow may prosecute her petition, for dower, in either the county, or the circuit court. The statute provides no specific mode of contesting the title of the husband, to the land, in which dower is claimed, and sought to be set apart. And, I apprehend, that if there was a *prima facie* title shown in the husband, a court of law would award dower. But, it could not prejudice the claim of others, whether such claim was in law or equity.— If there was a paramount title, in another, and the

GILLESPIE et al. *vs.* SOMERVILLE.

equitable title had never been in the husband, during coverture, dower would be ousted.

Sufficient has been said, to sustain the jurisdiction of chancery; and the subject we have just touched on, will be further investigated, in the examination of the second point presented, to which we will now proceed.

Was the estate of the husband, in the land in question, such as to entitle his widow to dower, in it?

A tenant in dower, at common law, is thus defined, by *Littleton:* "When a man is seized of lands or tenements, in fee simple, fee tail general, or as heir in special tail, and taketh a wife, and dieth, the wife, after the decease of her husband, shall be endowed of the third part of such lands and tenements, as were her husband's at any time during coverture."[a]   [a]Coke'sLit 31, A

By this definition of dower, at common law, it will be seen, that it could only be carved out of the legal estate, of which the husband had been seized, during coverture. She was not entitled to dower, out of an equitable estate, nor of an use. And the wife was often defeated of her dower, by the husband being only a *cestui que use.*

The statute of Henry VIII, commonly called the statute of uses, changed uses into legal estates. The consequence was, that the widow became entitled to dower, out of all those estates that had been converted into legal estates, by the operation of the statute. But, in England, even under the statute of uses, the right of dower was never extended to an estate, merely in equity. It did not extend to an equity of redemption, nor to a trust, if the trust was so created, as to avoid the operation of the statute

of uses. After the redemption of the mortgaged premises, by the heir, the widow's right of dower would revive, on her paying her proportion of the redemption money.

This is still believed to be the rule of law in England. In the United States, the widow's right of dower has received a more liberal interpretation: and, an equity of redemption is considered as a legal estate, and the widow entitled to her dower in it. This is the rule in those States where they have no express statute on the subject.[a]

In this State, we have a statute, for the express purpose of extending the widow's right of dower, that, so far as dower is concerned, adopts, in substance, the provisions of the English statute of uses. The statute, referred to, provides, "that, where any person, to whose use, or in trust for whose benefit, another is or shall be seized of lands, tenements or hereditaments; hath, or shall have such inheritance in the use or trust, as that if it had been a legal right, the husband or wife of such person, would thereof have been entitled to courtesy or dower, such husband or wife shall have and hold, and, may, by the remedy, proper in such cases, recover courtesy or dower of such lands, tenements and hereditaments.[b]"

The construction given to this statute, in *Shields* vs. *Lyon*,[c] was, that it extended to an equitable estate. This was going farther, than the construction given to the English statute of uses would justify; but, it is in accordance with the more liberal construction, that obtains in the United States.

Strictly speaking, the statute would not embrace a naked equity; that statute only converting uses into legal estates. And uses were created by deed;

[a] 4 Kent's C. 44

[b] Toul. Dig. 247

[c] Minor's R 283

GILLESPIE et al. *vs.* SOMERVILLE.

and, perhaps, a rigid construction of our own statute, would not go farther:

The case of *Shields* vs. *Lyon,* was this: James Caller, in his life-time, was seized of a tract of land, for which he held the certificate of confirmation of the commissioners of the land office, certifying that he was entitled to a patent, from the United States, for the land in question, under the act of congress, of 3d March, 1803. He died in possession of the land, without having ever obtained a patent for the same. After his death, the land was sold at sheriff's sale, and Shields became the purchaser. Shields obtained a patent in his own name, as purchaser, at the sheriff's sale. The widow of Caller, had her dower allotted and set apart, in the land; and Lyon held, as her tenant, and successfully defended, on her right of dower, against Shields's patent. The equitable title was in Caller, but it was not an use, nor a trust created by deed: by a liberal interpretation, however, such a trust was implied. The equity was complete, because there was nothing more required of Caller, to do, before the perfection of his title, by the reception of the patent: and, until he received it, the government of the United States, in the language of the judge who delivered the opinion, "would be viewed as holding the legal title for his benefit."

This construction of our statute, was strongly resisted, at the time it was given; but it has been considered as a governing case, ever since—and now, receives the unqualified approbation of this court.

In Kentucky the wife's right of dower was acknowledged and allowed, in a case where the husband's equity was complete; but he had sold, before his legal title had been perfected.

GILLESPIE et al. *vs.* SOMERVILLE.

The facts of the case were these, in the year 1784, or 1785, George Shortridge sold to William Elliott, who had, before intermarried with one of the appellees, William Gallaspie's settlement and pre-emption, and transferred to Elliott, Gallaspie's bond for a conveyance. In January, 1786, Elliott sold a part of the land to George and Owen Wynn, and executed to them, his obligation, with a condition for a conveyance of the land, so sold to them, clear of all incumbrances, with general warranty, on or before the 1st of October then next ensuing.

In October, 1787, Gallaspie conveyed the settlement and pre-emption, to Elliott, in fee simple, by deed, duly enrolled. Elliott died, without having made a title to the purchasers, under him. A bill was filed against his heirs and against his widow, to compel a conveyance. The court decreed a conveyance, subject to the widow's dower; from which the complainant appealed.

The case was ably argued, by very eminent counsel, and it was insisted, that, as Elliott had sold his equity, before there was any legal title in himself, when the title was made to him, he held it in trust, for the complainants. But Chief Justice *Edwards*, in a very able and luminous opinion, for the court, sustained the widow's right to dower—although the estate of her husband, at the time he contracted to sell, was only an equitable one; and, that the wife's right had attached to that equity, before its conveyance, by covenant, to the complainants.[a]

[a]Hardin, 482.

This, too, was a case where the equity was complete; and, there was nothing for Elliott to do, to entitle him to a complete legal title.

But, there is to be found, in the history of land ti-

tles in this country, an imperfect equity, that, in its character, is *sui generis*. It is neither an equitable title, as understood by the books, nor is it a legal title; yet, it is both, in an inchoate state. It is, where land has been sold, under the credit system, by the government of the United States, and the first instalment paid: a certificate of such payment is given to the purchaser, acknowledging, on the part of the government, the sale, the payment made of the first instalment, with a declaration, that the purchaser shall be entitled to a patent, upon his paying the remaining instalments. The purchaser, here, does not hold a perfect equity, until he has paid for the land; and it is not a legal title complete, until he receives a patent.

The opinion of the court in the case of *Shields* vs. *Lyon*, was express, "that a patent was clearly contemplated, (by the act of congress,) as the consummation of the legal title. The certificate is assignable, and the patent will issue in the name of the assignee: if it has been assigned before full payment, it would seem the wife of the first purchaser would not be entitled to dower in the land, because, the equitable estate had never vested in her husband, as a complete equity.

If there has been an agreement to convey, founded on a sufficient consideration, before a complete equitable title had vested, and the legal title should afterwards vest in the vendor, equity would hold him to be a trustee for the vendee.

Chancellor *Kent*, lays down the rule, to be, if an agreement be made, by the husband, to convey, before dower attaches, and, it be enforced in equity, it will extinguish the claim of dower.[a]

[a] 4Kent's C 49

If, in the case under consideration, Gillespie had not paid for the lots, at the time of his agreement to convey to Somerville, equity, in enforcing that agreement will extinguish the widows claim to dower; because, neither the legal or the equitable estate was in the husband at the time he agreed to convey, and consequently no right of dower had attached.

The Chancellor, in rendering his decree, seems to have considered that the equitable title was in Gillespie at the time he covenanted to convey to Somerville. Whether this opinion was founded on an impression that he had, at that time, paid for the lots, or in his discarding the distinction, I have endeavored to draw, between perfect and imperfect equities, the record does not satisfactorily disclose.

In the argument, it was said that Gillespie had not paid the commissioners of the town of Russelville, at the time he covenanted to convey to Somerville; nor had they paid the government of the United States, from whom the purchase had been made under the credit system. If these facts were presented by the record, according to the principles we have laid down, Somerville would be entitled to a conveyance of the lots, unincumbered by the widow's dower. But if Gillespie had paid for the land before he agreed to convey it, his equity was complete, and the wife's dower would have attached to the land; and the most that the Chancellor could, with propriety have done, would have been, to decree the conveyance subject to the widow's dower, as was done in the case cited from Hardin.

The bill is very defective in not averring the particular kind of right that Gillespie had in the lots at the time of his agreement to convey them to Somer-

ville. It charges that he had purchased from the commissioners of the town of Russelville, and that he held their obligation, or agreement, to make him titles when "*or so soon as he should make payment therefor.*" But, for aught we know, he may have paid, before his sale to Somerville; at any rate, we are not allowed to draw a contrary conclusion, from the averment. It does not assume to say, whether payment was made or not, at the time of the contract between Somerville and Gillespie. Nothing certain can be inferred from the averment but that Gillespie had originally made the contract on a credit.

The decree was predicated on the ancient common law doctrine of dower, that it could only be carved out of a legal estate. The statute giving a widow dower in an use, or trust, does not seem to have been noticed by the Chancellor, in his decree.

We believe that the record, as presented, does not sustain the decree; but as the bill is so very imperfect, we will reverse the decree and remand to the court below, at the cost of the complainant.